Anthony O. Egbase, Esq. (SBN 181721)
Victoria T. Kajo Esq. (SBN: 265037)
Kevin Tang Esq. (SBN: 291051)
Crystle Lindsey Esq. (SBN: 281944)
**A.O.E LAW & ASSOCIATES | A Professional Law Corporation**
350 South Figueroa Street, Suite 189 Los Angeles, California 90071
Tel. (213) 620-7070; Fax. (213)-620-1200
_info@aoelaw.com_

Proposed Attorneys for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

In re:

REDONDO BROTHERS INC.

**Debtor-In-Possession**

CASE No.: 2:15-bk-17527-BB

**Chapter 11**

**DECLARATION OF ROBERTO CHONG IN SUPPORT OF DEBTOR'S EMERGENCY FIRST DAY MOTIONS**

Date: To be Determined
Time: To be Determined
Place: To be Determined

I Roberto Chong, declare:

1. I am the President of Redondo Brothers, Inc. a California corporation, the debtor and debtor-in-possession in Case No. 2:15-bk-17527-BB, the "Debtor").

2. I have been responsible for and overseen the general operations of the Debtor since its establishment, and, in my current capacity, I am familiar with the day-to-day operations, business, and financial affairs of the Debtor. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my discussion with other employees and representatives of the Debtor, my review of relevant documents, or my

opinion based upon my experience and knowledge of the Debtor's operations and financial conditions. If I were called to testify, I would testify competently to the facts set forth in this declaration.

3. I am authorized by the Debtor to submit this declaration. I submit this Declaration to assist the Court and other parties in interest in understanding the circumstances that led to the commencement of this chapter 11 case and in support of

(a) the Debtor's petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the May 11, 2015 and

(b) the requested relief, in the form of motions and applications, that the Debtor has filed with the Court (the "First Day Motions") and the other pleadings and documents contemporaneously filed therewith. The Debtor seeks the relief set forth in the First Day Motions with the goal of minimizing the potential adverse effects of the commencement of its chapter 11 case on its business. The First Day Motions filed in the above-captioned chapter 11 cases are:

- Emergency First Day Motion for Order Authorizing Debtor's Use of Cash Collateral on Interim Basis Pending A Final Hearing.

- Emergency First Day Motion for Order Authorizing Debtor to Pay Pre-Petition Claims of Certain Critical Vendors Necessary for Its Continued Operations.

- Emergency First Day Motion for Order Authorizing Debtor to Pay Pre-Petition Sales and Use Similar Taxes in the Ordinary Course of Business.

4. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, information supplied by employees under my supervision, or my opinion based on experience, knowledge, and information concerning the operations of the Debtor. It is my belief that the relief sought in the First Day Motions is essential to

ensure the uninterrupted operation of the Debtor's business and to the success of the Debtor's restructuring.

5. I have reviewed each of the First Day Motions, am familiar with the factual information set forth therein, and incorporate such facts into this Declaration by reference and adopt them as my own as if they were set forth herein. If I were called upon to testify, I would testify competently to the facts set forth herein and in the First Day Motions.

**Introduction**

6. Redondo Brothers Inc. is a California Corporation formed by three brothers, Fernando, Chong, Marcelino Chong and Roberto Chong ("Chong Brothers").

7. The Chong Brothers have worked as successful restaurant owners and real estate investors. We receive monthly salary for work performed in the restaurants and dividends at the end of the year for profits earned by the corporations. The Brothers invested in a high-end fine dining restaurant (Irvine Brothers) DBA China Bistro in the city of Irvin California. The Chong Brothers encumbered their landed property ("Vacant Lot") inherited from their mother and invested it as a startup cost of Irving Brothers.

8. The Chong brothers also financed Irvine Brothers by obtaining an SBA loan through Wells Fargo Bank NA ("SBA Loan"). The SBA loan was secured by the assets of Redondo Brothers and its affiliates, Irvine Brothers Inc., Chong Inc., Inc. and Hermosa Brothers Inc. The foregoing events caused a decrease in the Chong Brother's available cash flow and caused a dramatic increase in the rate of default by the Debtor and its affiliates to their creditors. The Debtor requires a restructuring of its indebtedness to continue its operations and remain economically viable.

9. In late 2008, as the Debtor's liquidity position continued to deteriorate, the Debtor struggled to meet its debt service obligations under its prepetition credit agreements,

which resulted in defaults under the Debtor's senior and junior debt facilities. Over the last several months the Debtor has explored available restructuring alternatives as part of its overall turnaround efforts. These efforts have included various operational initiatives designed to increase operating performance and attempts to locate a strategic partner to invest additional money into the Debtor. After months of careful review the Debtor has determined that the restructuring of its indebtedness through a bankruptcy court supervised process is the best way to preserve the business to continue their operations and remain economically viable.

**Debtor's Prepetition Capital Structure**

10. As of the Petition Date, the debtor has outstanding debt obligations in the aggregate principal amount of approximately $1,027,969.53 consisting primarily of approximately (a) $570,000.00 in secured debt under a first lien senior secured credit facility owed to Wells Fargo Bank NA; (b) $227,062.68 under a senior unsecured lien owed to the State Board of Equalization for sales use tax (d) $21,353.60 property tax owed to the landlord of the debtor's leased property and (e) $209,553.25 owed to trade creditors and other vendors that hold unsecured claims.

11. The debtor has cash on hand of approximately $110,124.49. The debtor's primary assets consists of service agreements with vendors, its cash on hand, its receivables in the amount of $8,000.00, its inventory in the amount of $6,000, liquor license valued at $25,000, its lease agreement with S& R Partners LLC for the real property located at W's China Bistro PO Box 2178 Redondo Beach  CA 90278, net tangible equipment worth $13,980.00 and goodwill valued at $200,000.00.

(i) *Small Business Administration loan with Wells Fargo Bank NA.*

12. As of the Petition Date, the Debtor is a party to that certain $793,700.00 Small Business Administration Loan ("SBA Loan") dated as of December 17, 2007 (the "SBA Loan Agreement"), between the debtor and Wells Fargo Bank NA. The SBA Loan Agreement is secured by substantially all of the Debtor's assets located at 1410 Pacific Coast Highway in Redondo Beach; and its affiliates' assets located at 2516 Pacific Coast Highway in Hermosa Beach CA, California 9025; 3282 N. Sepulveda Boulevard, Manhattan Beach, CA 90266 and 18415 S. Avalon Boulevard in Carson CA 9076. As of the Petition Date, approximately $570,000.00 is outstanding under the SBA Loan Agreement inclusive of accrued and unpaid interest and fees and costs. See "**Exhibit 2**" attached herein.

(ii) *The Payment Agreement with the State Board of Equalization*

13. On April 15, 2013, Chong Brothers, entered into a payment agreement in response to certain events of default to the State Board of Equalization. On May 30, 2014, the same parties entered into a payment agreement in response to certain events of default so that the Debtor could continue to explore various restructuring alternatives. See "**Exhibit 3**" attached herein. As of May 7, 2015, the total liability to the State Board of Equalization is $218,620.40.

(iii) *General Unsecured Debt*

14. The Debtor has approximately $204,613.00 in unsecured debt to debtor's vendors and other unsecured creditors.

## **OVERVIEW OF FIRST DAY MOTIONS**

**Motion to Approve Use of Cash Collateral**

15. As more fully set forth in the DIP Motion, the Debtor has an urgent and immediate need for access to Cash Collateral because it is imperative to ensure the Debtor's continued

ordinary course of operation and to avoid immediate and irreparable harm to the Debtor's business, the value of its assets, its creditors and other parties in interest. The Debtor requires immediate and ongoing access to cash in order to meet its ordinary course post-petition expenses, including funding payroll to employees and payment to vendors for provision of goods and services. Absent the use of cash collateral, the Debtor would be forced to shut-down its business and convert this case to chapter 7, which would have a tremendously adverse effect on the Debtor's estate and its employees, vendors, creditors and other constituents.

16. Thus, the Debtor believes that it is fair, reasonable and necessary for the Court to approve the order authorizing the use of cash collateral on an interim basis pending a final hearing and to provide adequate protection to debtor's lenders.

17. Attached as **Exhibit "1"** is a true and correct copy of Debtor's Budget.

18. Attached as **Exhibit "2"** is a true and correct copy of Loan Documents for Wells Fargo SBA Loan.

19. Attached as **Exhibit "3"** is a true and correct copy of the Installment Payment Agreement with State Board of Equalization.

20. Attached as **Exhibit "4"** is a true and correct copy of the Debtor's Proposed Order Authorizing Interim Use of Cash Collateral.

**Motion for an Order Authorizing Debtor To Pay Pre-Petition Claims Of Certain Critical Vendors Necessary For Its Continued Operations**

21. The Debtor's business and assets and ultimately reorganization will be adversely affected if its critical vendors cease doing business with the Debtor due to the Debtor's failure to honor pre-petition invoices payable to such vendors. If any of the critical vendors alter, refuse or discontinue service, even for a brief period, the Debtor's business operations

would be severely disrupted. In particular, debtor asserts that: (a) the goods and services provided by the critical vendors are absolutely necessary to the debtor's ongoing business operation; (b) the termination of such goods and services would likely force an imminent shutdown of the debtor's production and (c) the debtor cannot obtain such services at a lower cost from alternate providers, even after full payment of the pre-petition amounts owed to critical vendors.

22. In contrast, there will be no prejudice to unsecured creditors resulting from the court's authorization for the debtor to honor the pre-petition debts as requested herein, since such payments are absolutely critical to debtor's continued operations and efforts to reorganize in a Chapter 11. Accordingly, authorizing the debtor to pay the critical vendors will benefit both favored and disfavored creditors and the entire estate. Due to the vital importance of the critical vendors to the reorganization process, the debtor respectfully submits that payment of the pre-petition amount owed them is necessary an appropriate.

23. Finally, in order to avoid the significant risks associated with failure to pay pre-petition amounts owed these critical vendors, the debtor believed that it is necessary and appropriate to seek authorization to make these payment amounts.

24. This Motion should be granted because the vendors are permitted to come before this Court and seek relief according to the Procedures proposed. I believe that because the proposed procedures protect the Debtor without materially prejudicing the vendors, the Motion for order authorizing debtor to pay pre-petition claims of certain critical vendors necessary for the continued operations of the debtor should be approved.

25. Attached as **Exhibit "5"** is Debtor's Proposed Order Granting Debtor's Emergency First Day Motion for Order Authorizing Debtor to Pay Pre-Petition Claims of Certain Critical Vendors Necessary for Its Continued Operations.

**Motion for An Order Authorizing The Debtor To Pay Pre-Petition Sales And Use Similar Taxes In The Ordinary Course Of Business**

26. In connection with the normal operation of their businesses, the Debtor collects, withhold and incur Taxes that include sales and use, business and regulatory fees, and other taxes and fees described in this Motion. The Debtor operates in California. The Debtor remit's the Taxes to various federal, state and local government authorities (collectively, the "Governmental Authorities") in the ordinary course of its business. Taxes are remitted by the Debtor through checks and electronic transfers that are processed through its banks and other financial institutions (the "Banks").

27. Most of the Taxes collected prepetition are not property of the Debtor's estates, and must for that reason be turned over to the Governmental Authorities. To the extent that they are not actually the property of the Governmental Authorities, they may well give rise to priority claims or statutorily secured claims. I believe it is necessary to pay the Taxes to forestall Governmental Authorities from taking actions that might interfere with the Debtor's objectives in this case, including possibly bringing personal liability actions against directors, officers and other employees in connection with non-payment of Taxes. Actions against the Debtor's directors, officers and other employees would likely distract key personnel, whose full-time attention to the Debtor's restructuring efforts is required, and would likely cause potential business disruptions. Any such business disruptions would likely erode the Debtor's customer base and negatively impact this chapter 11 case. Payment now will avoid the accrual of additional interest or other penalties. Accordingly, I believe the proposed relief is necessary and in the best interest of the Debtor's estates and its creditors.

I declare under the penalty of perjury, under the laws of the State of California that the foregoing

is true and correct.

Executed: May 12, 2015

Roberto Chong

/s/ Roberto Chong _____
On Behalf of Debtor and Debtor-in Possession

# EXHIBIT 1

# Redondo Brothers
## Budget for May 2015 to October 2015

| | May-15 | Jun-15 | Jul-15 | Aug-15 | Sep-15 | Oct-15 |
|---|---|---|---|---|---|---|
| Ordinary Income/Expense | | | | | | |
| Total Income | $ 134,864 | $ 134,864 | $ 134,864 | $ 134,864 | $ 134,864 | $ 134,864 |
| Cost of Goods Sold | | | | | | |
| Total COGS | $ 39,365 | $ 39,365 | $ 39,365 | $ 39,365 | $ 39,365 | $ 39,365 |
| Gross Profit | $ 95,499 | $ 95,499 | $ 95,499 | $ 95,499 | $ 95,499 | $ 95,499 |
| Expense | | | | | | |
| Total 7300 · MEDICALS | $ 205 | $ 205 | $ 205 | $ 205 | $ 205 | $ 205 |
| Total 6000 · Payroll Expenses | $ 47,877 | $ 47,877 | $ 47,877 | $ 47,877 | $ 47,877 | $ 47,877 |
| 7000 · CONTROLLABLE EXPENSES | | | | | | |
| 7010 · Advertising | $ 519 | $ 519 | $ 519 | $ 519 | $ 519 | $ 519 |
| Total 7020 · Automobile Expenses | $ 1,372 | $ 1,372 | $ 1,372 | $ 1,372 | $ 1,372 | $ 1,372 |
| 7070 · Dues and Subscriptions | $ 69 | $ 69 | $ 69 | $ 69 | $ 69 | $ 69 |
| Total 7080 · Entertainments | $ 544 | $ 544 | $ 544 | $ 544 | $ 544 | $ 544 |
| Total 7160 · REPAIRS | $ 2,805 | $ 2,805 | $ 2,805 | $ 2,805 | $ 2,805 | $ 2,805 |
| Total 7220 · RESTAURANT SUPPLIES | $ 3,402 | $ 3,402 | $ 3,402 | $ 3,402 | $ 3,402 | $ 3,402 |
| Total 7230 · SERVICES | $ 1,235 | $ 1,235 | $ 1,235 | $ 1,235 | $ 1,235 | $ 1,235 |
| Total 7000 · CONTROLLABLE EXPENSES | $ 10,280 | $ 10,280 | $ 10,280 | $ 10,280 | $ 10,280 | $ 10,280 |
| 7500 · FIXED EXPENSES | | | | | | |
| Total 7510 · Bank Service Charges | $ 2,346 | $ 2,346 | $ 2,346 | $ 2,346 | $ 2,346 | $ 2,346 |
| 7580 · Equipment Rental | $ 541 | $ 541 | $ 541 | $ 541 | $ 541 | $ 541 |
| Total 7590 · INSURANCE | $ 1,824 | $ 1,824 | $ 1,824 | $ 1,824 | $ 1,824 | $ 1,824 |
| Total 7700 · Professional Fees | $ 2,218 | $ 2,218 | $ 2,218 | $ 2,218 | $ 2,218 | $ 2,218 |
| 7740 · W's REDONDO MONTHLY LEASES | $ 12,283 | $ 12,283 | $ 12,283 | $ 12,283 | $ 12,283 | $ 12,283 |
| Total 7750 · TAXES | $ 3,280 | $ 3,280 | $ 3,280 | $ 3,280 | $ 3,280 | $ 3,280 |
| Total 7790 · Utilities | $ 4,932 | $ 4,932 | $ 4,932 | $ 4,932 | $ 4,932 | $ 4,932 |
| Total 7500 · FIXED EXPENSES | $ 29,643 | $ 29,643 | $ 29,643 | $ 29,643 | $ 29,643 | $ 29,643 |
| Adequate Protection Payment to Wells Fargo | $ 1,879 | $ 1,879 | $ 1,879 | $ 1,879 | $ 1,879 | $ 1,879 |
| Total Expense | $ 89,883 | $ 89,883 | $ 89,883 | $ 89,883 | $ 89,883 | $ 89,883 |
| Net Income | $ 5,616 | $ 5,616 | $ 5,616 | $ 5,616 | $ 5,616 | $ 5,616 |

# EXHIBIT 2

(Page 1 of 3)



U.S. Small Business Administration

# NOTE

| SBA Loan # | ⬛⬛5005 |
| --- | --- |
| SBA Loan Name | W's China Bistro |
| Date | December 17, 2007 |
| Loan Amount | $793,700.00 |
| Interest Rate | Variable |
| Borrower | Irvine Brothers, Inc. |
| Operating Company | N/A |
| Lender | Wells Fargo Bank, National Association |

## 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Seven Hundred Ninety-three Thousand Seven Hundred and 00/100 Dollars , interest on the unpaid principal balance, and all other amounts required by this Note.

## 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 9.00% per year. This initial rate is the prime rate on the date SBA received the loan application, plus 1.75%. The initial interest rate must remain in effect until the first change period begins.

Borrower must pay a total of 10 payments of interest only on the disbursed principal balance beginning one  month from the month this Note is dated and every month thereafter; payments must be made on the 16th calendar day in the months they are due.

Borrower must pay principal and interest payments of $10,621.84 every month beginning eleven  months from the month this Note is dated; payments must be made on the 16th calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 1.75% above the prime rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

    a. Give Lender written notice;

EXHIBIT 1 (1 of 3)

(Page 2 of 3)

       b. Pay all accrued interest; and

       c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

    If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

    All remaining principal and accrued interest is due and payable 10 years from date of Note.

    Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

**4. DEFAULT:** Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

  A. Fails to do anything required by this Note and other Loan Documents;

  B. Defaults on any other loan with Lender;

  C. Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

  D. Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

  E. Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

  F. Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

  G. Fails to pay any taxes when due;

  H. Becomes the subject of a proceeding under any bankruptcy or insolvency law;

  I. Has a receiver or liquidator appointed for any part of their business or property;

  J. Makes an assignment for the benefit of creditors;

  K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

  L. Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

  M. Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

**5. LENDER'S RIGHTS IF THERE IS A DEFAULT:** Without notice or demand and without giving up any of its rights, Lender may:

  A. Require immediate payment of all amounts owing under this Note;

  B. Collect all amounts owing from any Borrower or Guarantor;

  C. File suit and obtain judgment;

  D. Take possession of any Collateral; or

  E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

**6. LENDER'S GENERAL POWERS:** Without notice and without Borrower's consent, Lender may:

  A. Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

  B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

  C. Release anyone obligated to pay this Note;

  D. Compromise, release, renew, extend or substitute any of the Collateral; and

  E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

**7. WHEN FEDERAL LAW APPLIES:** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**8. SUCCESSORS AND ASSIGNS:** Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

  A. All individuals and entities signing this Note are jointly and severally liable.

  B. Borrower waives all suretyship defenses.

  C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

  D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

  E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

  F. If any part of this Note is unenforceable, all other parts remain in effect.

  G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

**10. STATE-SPECIFIC PROVISIONS:**

  DUE ON SALE. Borrower acknowledges this Note is secured by a Deed of Trust in favor of Lender on real property located in Los Angeles and Los Angeles County, State of California. That Deed of Trust contains the following due-on-sale provision:

    DUE ON SALE - CONSENT BY LENDER. Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a

EXHIBIT  1 (2 of 3)

(Page 3  of  3)

corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**
By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

Irvine Brothers, Inc.

By _____
Fernando Chong, President of Irvine Brothers, Inc.

By _____
Roberto Chong, Secretary of Irvine Brothers, Inc.

By _____
Marcelino Chong, Treasurer of Irvine Brothers, Inc.

SBA Form 147 (06/03/02) Version 4.1

Page 3/3

EXHIBIT _1_ (3 of 3)

(Page 1 of 8)

|||||| (barcode) ||||||
200089437219800170

## COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $715,700.00 | 12-17-2007 | 12-15-2017 | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Irvine Brothers, Inc.
17589 Harvard Avenue #A
Irvine, CA  92614

**Lender:**  Wells Fargo Bank, National Association
SBA Lending
121 Park Center Plaza, 9th Floor
San Jose, CA  95113

**Grantor:**  Redondo Brothers, Inc.
1410 S. Pacific Coast Hwy
Redondo Beach, CA  90277

THIS COMMERCIAL SECURITY AGREEMENT dated December 17, 2007, is made and executed among Redondo Brothers, Inc. ("Grantor"); Irvine Brothers, Inc. ("Borrower"); and Wells Fargo Bank, National Association ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

   All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

   (A)  All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

   (B)  All products and produce of any of the property described in this Collateral section.

   (C)  All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

   (D)  All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

   (E)  All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Except as prohibited by applicable law, Grantor waives any right to require Lender to (A) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (B) proceed against any person, including Borrower, before proceeding against Grantor; (C) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Grantor; (D) apply any payments or proceeds received against the Indebtedness in any order; (E) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (F) disclose any information about the Indebtedness, the Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (G) pursue any remedy or course of action in Lender's power whatsoever.

Grantor also waives any and all rights or defenses arising by reason of (A) any disability or other defense of Borrower, any other guarantor or surety or any other person; (B) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (C) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Grantor and Lender; (D) any act or omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (E) any statute of limitations in any action under this Agreement or on the Indebtedness; or (F) any modification or change in terms of the Indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the Indebtedness is due and any change in the interest rate.

EXHIBIT 5 (1 of 8)

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 2

Grantor waives all rights and defenses arising out of an election of remedies by Lender even though that election of remedies, such as a non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Grantor's rights of subrogation and reimbursement against Borrower by operation of Section 580d of the California Code of Civil Procedure or otherwise.

Grantor waives all rights and defenses that Grantor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Grantor without first foreclosing on any real property collateral pledged by Borrower ; and (2) If Lender forecloses on any real property collateral pledged by the Borrower : (A) The amount of the Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; (B) The Lender may collect from the Grantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Grantor may have to collect from the borrower. This is an unconditional and irrevocable waiver of any rights and defenses the Grantor may have because the Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Sections 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Grantor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Grantor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Grantor further understands and agrees that this Agreement is a separate and independent contract between Grantor and Lender, given for full and ample consideration, and is enforceable on its own terms. Grantor acknowledges that Grantor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Until all indebtedness is paid in full, Grantor waives any right to enforce any remedy Grantor may have against Borrower or any other guarantor, surety, or other person, and further, Grantor waives any right to participate in any collateral for the Indebtedness now or hereafter held by Lender.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management of the Corporation Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its certificate or articles of incorporation and bylaws do not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of Inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of California, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for Inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell Inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

EXHIBIT 5 (2 of 8)

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall

EXHIBIT _5 (3 of 8)_

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

**Page 4**

be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default In Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Borrower's or any Grantor's ability to repay the Indebtedness or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the California Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

EXHIBIT _5 (4 of 8)_

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**FURTHER ASSURANCES.** The parties hereto agree to do all things deemed necessary by Lender in order to fully document the loan evidenced by this Note and any related agreements, and will fully cooperate concerning the execution and delivery of security agreements, stock powers, instructions and/or other documents pertaining to any collateral intended to secure the Indebtedness. The undersigned agree to assist in the cure of any defects in the execution, delivery or substance of the Note and related agreements, and in the creation and perfection of any liens, security interests or other collateral rights securing the Note.

**CONSENT TO SELL LOAN.** The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; and (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender.

**FACSIMILE AND COUNTERPART.** This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

**ARBITRATION AGREEMENT.** Arbitration - Binding Arbitration. Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Agreement or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents or injuries of any kind whatsoever relating to or involving Business Banking, Regional Banking, or any successor group or department of Lender. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY.

**A. Governing Rules.** Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the AAA (American Arbitration Association), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to, as applicable, as the "Rules"). If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control. Arbitration proceedings hereunder shall be conducted at a location mutually agreeable to the parties, or if they cannot agree, then at a location selected by the AAA in the state of the applicable substantive law primarily governing the Credit. Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. Arbitration may be demanded at any time, and may be compelled by summary proceedings in Court. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief. The arbitrator shall award all costs and expenses of the arbitration proceeding. Nothing contained herein shall be deemed to be a waiver by any party that is a Bank of the protections afforded to it under 12 U.S.C. §91 or any similar applicable state law.

**B. No Waiver of Provisional Remedies, Self-Help and Foreclosure.** The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i), (ii) and (iii) of this paragraph.

**C. Arbitrator Qualifications and Powers.** Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Every arbitrator must be a practicing attorney or a retired member of the state or federal judiciary, in either case with a minimum of ten years experience in the substantive law applicable to the subject matter of the Dispute. The arbitrator will determine whether or not an issue is arbitratable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all Disputes in accordance with the applicable substantive law and may grant any remedy or relief that a court of such state could

EXHIBIT 5 (5 of 8)

(Page 6 of 8)

# COMMERCIAL SECURITY AGREEMENT
## (Continued)

Page 6

order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the applicable State Rules of Civil Procedure, or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

D.  Discovery.  In any arbitration proceeding discovery will be permitted in accordance with the Rules.  All discovery shall be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date and within 180 days of the filing of the Dispute with the AAA.  Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

E.  Miscellaneous.  To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA.  The resolution of any Dispute shall be determined by a separate arbitration proceeding and such Dispute shall not be consolidated with other disputes or included in any class proceeding. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation.  If more than one agreement for arbitration by or between the parties potentially applies to a Dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the Dispute shall control.  This arbitration provision shall survive termination, amendment or expiration of any of the documents or any relationship between the parties.

F.  State-Specific Provisions.

If California law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference:  Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration. If any such Dispute is not submitted to arbitration, the Dispute shall, at the election of any party,  be referred to a referee in accordance with California Code of Civil Procedure Section 638 et seq., and this general reference agreement is intended to be specifically enforceable in accordance with said Section 638.  A referee with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures.  Judgment upon the decision rendered by a referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645.

If Idaho law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference:  Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Idaho, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

If Montana law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference:  Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Montana, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

If Nevada law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference:  Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Nevada, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

If Utah law governs the Dispute, the following provision is included. Real Property Collateral; Judicial Reference:  Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration.  If any such Dispute is not submitted to arbitration, the Dispute shall, at the election of any party, be referred to a master in accordance with Utah Rule of Civil Procedure 53, and this general reference agreement is intended to be specifically enforceable.  A master with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures.  Judgment upon the decision rendered by a master shall be entered in the court in which such proceeding was commenced in accordance with Utah Rule of Civil Procedure 53(e).

SBA ARBITRATION. The parties specifically agree that the provisions of this Arbitration Program are not applicable to any dispute between any party and the U.S. Small Business Administration (the "SBA"), including but not limited to, any dispute with the SBA after purchase of the loan by the SBA.

GOVERNING LAW. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

MISCELLANEOUS PROVISIONS.  The following miscellaneous provisions are a part of this Agreement:

Amendments.  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

Attorneys' Fees; Expenses.  Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.  Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement.  Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.  Grantor also shall pay all court costs and such additional fees as may be directed by the court.

Caption Headings.  Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

Applicable Law.  The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program

EXHIBIT ___5__(_6_of_8_)

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration will not be enforceable when SBA is the holder of the Note secured by this instrument.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Agreement.

**Preference Payments.** Any monies Lender pays because of an asserted preference claim in Borrower's or Grantor's bankruptcy will become a part of the Indebtedness and, at Lender's option, shall be payable by Borrower and Grantor as provided in this Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Waiver of Co-Obligor's Rights.** If more than one person is obligated for the Indebtedness, Grantor irrevocably waives, disclaims and relinquishes all claims against such other person which Grantor has or would otherwise have by virtue of payment of the Indebtedness or any part thereof, specifically including but not limited to all rights of indemnity, contribution or exoneration.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Irvine Brothers, Inc. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this

EXHIBIT $5 (7 \text{ of } 8)$

(Page 8 of 8)

## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 8

Agreement.

Grantor. The word "Grantor" means Redondo Brothers, Inc..

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

Lender. The word "Lender" means Wells Fargo Bank, National Association, its successors and assigns.

Note. The word "Note" means the Note executed by Irvine Brothers, Inc. in the principal amount of $793,700.00 dated December 17, 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Property. The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER 17, 2007.

GRANTOR:

REDONDO BROTHERS, INC.

By: _____
Roberto Chong, President of Redondo Brothers, Inc.

By: _____
Marcelino Chang, Secretary of Redondo Brothers, Inc.

By: _____
Fernando Chong, Chairman of Redondo Brothers, Inc.

BORROWER:

IRVINE BROTHERS, INC.

By: _____
Fernando Chong, President of Irvine Brothers, Inc.

By: _____
Roberto Chong, Secretary of Irvine Brothers, Inc.

By: _____
Marcelino Chong, Treasurer of Irvine Brothers, Inc.

LASER PRO Lending, Ver. 5.33.10.101  Copr. Harland Financial Solutions, Inc. 1997, 2007.  All Rights Reserved.  - CA  X:\CFI\LPL\CFI\LPL\E40.FC  TR-2607  PR-780

EXHIBIT   5 (8 of 8)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

UCC DIRECT SERVICES
2727 ALLEN PARKWAY
HOUSTON, TX 77019
USA

DOCUMENT NUMBER: 15277970002
FILING NUMBER: ████2613
FILING DATE: 12/21/2007 17:22
IMAGE GENERATED ELECTRONICALLY FOR XML FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Redondo Brothers, Inc. | | | | |

OR

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1410 S. Pacific Coast Hwy | Redondo Beach | CA | 90277 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | Corporation | CA | C2399622 □NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |

OR

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#, if any |
|---|---|---|---|---|
| | | | | □NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Wells Fargo Bank, National Association | | | | |

OR

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 121 Park Center Plaza 6th Floor | San Jose | CA | 95113 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

**5. ALT DESIGNATION:** □LESSEE/LESSOR □CONSIGNEE/CONSIGNOR □BAILEE/BAILOR □SELLER/BUYER □AG. LIEN □NON-UCC FILING

| □6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Attach Addendum (if applicable) | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] □All Debtors □Debtor 1 □Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

CA-██████-SBA 16

FILING OFFICE COPY

EXHIBIT _6 (1 of 2)_

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER [optional]** Gisella Melendez 800-331-3282 | |
| **B. SEND ACKNOWLEDGMENT TO: (Name and Address)** CT LIEN SOLUTIONS 2727 ALLEN PARKWAY HOUSTON, TX 77019 USA | **DOCUMENT NUMBER:** 33609050002 **FILING NUMBER:** ▉▉▉▉341 **FILING DATE:** 06/25/2012 07:41 IMAGE GENERATED ELECTRONICALLY FOR XML FILING THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

| | |
|---|---|
| **1a. INITIAL FINANCING STATEMENT FILE #** ▉▉▉2613 | **1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination.

**3.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these. Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

| ☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party. | ☐ DELETE name: Give record name to be deleted in item 6a or 6b. | ☐ ADD name: Complete item 7a or 7b, and also item 7c |
|---|---|---|

**6. CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L DEBTOR INFO | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID#, if any ☐ NONE |
|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME of SECURED PARTY of RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this amendment.

| | a. ORGANIZATION'S NAME Wells Fargo Bank, National Associaton | | | |
|---|---|---|---|---|
| OR | b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
CA-▉▉▉▉▉1061

FILING OFFICE COPY

EXHIBIT 6 (2 of 2)

Exhibit 7

# FORCED & ORDERLY LIQUIDATION VALUES

## W's China Bistro
## Redondo, CA

EXHIBIT 7 (1 of 3)

EXHIBIT A-II

### W'S CHINA BISTRO
### FORCED & ORDERLY LIQUIDATION VALUES

EFFECTIVE: February 3, 2015

| BTA # | QTY | DESCRIPTION | F/L VALUE | O/L VALUE |
|---|---|---|---|---|
| | | 1410 PACIFIC COAST HIGHWAY, REDONDO, CA 90277 | | |
| 27 | 1 | HOSHIZAKI MDL. KM-900MRH ICE MAKER AND ICE BIN | 500.00 | 800.00 |
| 28 | 1 | ROSS 4-QUART BATCH FREEZER | 500.00 | 800.00 |
| 29 | 1 | STAINLESS STEEL COUNTER SHELF & SINK | 200.00 | 350.00 |
| 30 | 1 | CAN OPENER | 25.00 | 50.00 |
| 31 | 1 | ALTO-SHAAM OVEN | 400.00 | 600.00 |
| 32 | 2 | SINGLE BURNER GAS RANGES | 300.00 | 500.00 |
| 33 | 1 | RINNAI RICE MAKER | 20.00 | 30.00 |
| 34 | 1 | HOBART DOUBLE DOOR OVEN | 600.00 | 800.00 |
| 35 | 1 | ROLLING BAKING RACK | 50.00 | 75.00 |
| 36 | 1 | DELFIELD STACKABLE COOLER | 200.00 | 300.00 |
| 37 | 1 | DELFIELD STACKABLE FREEZER | 200.00 | 300.00 |
| 38 | 1 | FRYMASTER FRYER | 400.00 | 600.00 |
| 39 | 1 | STAINLESS STEEL COUNTER | 200.00 | 300.00 |
| 40 | 1 | WOLF GAS GRILL, 6-BURNER | 400.00 | 600.00 |
| 41 | 1 | STEAMER, STAINLESS STEEL | 300.00 | 500.00 |
| 42 | 1 | CHINESE WOK RANGE, 8-BURNER (CUSTOM BUILT - POSSIBLE LH IMPROVEMENT) | 500.00 | 800.00 |
| 43 | 1 | KITCHEN PREP ISLAND, STAINLESS STEEL (CUSTOM BUILT - POSSIBLE LH IMPROVEMENT) | 1,000.00 | 1,500.00 |
| 44 | 2 | SHARP MDL. 1000W/R-21LC COMMERCIAL MICROWAVES | 125.00 | 175.00 |
| 45 | 1 | CECILWARE MDL. ME10E-N ELECTRIC WATER BOILER | 400.00 | 600.00 |
| 46 | 1 | NEMCO RICE COOKER | 50.00 | 75.00 |



EXHIBIT 7 (2 of 3)

EXHIBIT A-II

**W'S CHINA BISTRO**
FORCED & ORDERLY LIQUIDATION VALUES

EFFECTIVE: February 3, 2015

| BTA # | QTY | DESCRIPTION | F/L VALUE | O/L VALUE |
|---|---|---|---|---|
| 47 | 2 | WINCO MDL. RW-450 RICE COOKERS | 100.00 | 150.00 |
| 48 | 1 | VITA MIX BLENDER | 50.00 | 75.00 |
| 49 | 1 | ROBOT COUPE BLENDER | 50.00 | 75.00 |
| 50 | 24 | INDOOR DINING TABLES | 1,080.00 | 1,560.00 |
| 51 | 49 | INDOOR CHAIRS | 980.00 | 1,715.00 |
| 52 | 24 | OUTDOOR CHAIRS | 840.00 | 1,320.00 |
| 53 | 7 | BOOTHS | 350.00 | 525.00 |
| 54 | 3 | BENCHES | 150.00 | 250.00 |
| 55 | 8 | BAR STOOLS | 160.00 | 240.00 |
| 56 | 2 | 37" LCD TELEVISIONS | 300.00 | 500.00 |
| 57 | LOT | IBM POINT OF SALES SYSTEMS, (5) TERMINALS | 600.00 | 900.00 |
| 58 | 1 | KROWN UNDERCOUNTER BAR SINK | 500.00 | 800.00 |
| 59 | 1 | TRUE BEVERAGE COOLER/BEER TAP, 2-DOOR | 400.00 | 600.00 |
| 60 | 1 | BAR COUNTER/TAP | 500.00 | 800.00 |
| 61 | LOT | GLASSWARE, SILVERWARE AND COOKARE | 1,500.00 | 2,500.00 |
| 62 | 8 | METRO RACKS | 50.00 | 75.00 |
| 63 | | GRAND TOTAL: | $ 13,980.00 | $ 21,840.00 |



EXHIBIT 7 /3 of 3

BOE-407 REV. 19 (1-11)
INSTALLMENT PAYMENT AGREEMENT

STATE OF CALIFORNIA
BOARD OF EQUALIZATION

ACCOUNT NUMBER
SR AS 099549967

TAXPAYER NAME
CHONG'S INC

BUSINESS NAME
CHONG'S

**SECTION I: INSTALLMENT PAYMENT AGREEMENT**

LIABILITY PERIOD(S)
01/01/08 - 09/30/10

TOTAL AMOUNT DUE (including penalty and interest to date)
$162,166.50

SCHEDULE OF INSTALLMENT PAYMENTS
I agree to make $1250.00 on the 10th and $1250.00 on the 24th of each month beginning April 24, 2013. Scheduled payments will be auto debited from my bank account. I will ensure there are sufficient funds in my bank account at all times.

TERMS OF AGREEMENT
I must enroll in Auto Pay (Section II below) whereby the Board of Equalization (BOE) will electronically debit my bank account for the payments required by this agreement.

I must timely file and pay in full all returns and prepayments which become due. The finality penalty amount $11,265.28 may be subject to waiver upon completion of the payment arrangement. **Financials are subject to a twelve-month review .** I will complete and sign Section I and Section II and will provide copy of a voided check no later than 4/19/13 as requested. I may either fax or email the signed agreement to fax# 310-342-1179.

I agree to the terms outlined above and I certify that the financial information provided as a basis for this agreement is true and correct. I understand:
1) This agreement will be terminated if I fail to comply with the terms of this agreement. If not previously assessed, a collection fee may be assessed on each liability that is more than 90 days past due. 2) This agreement will be cancelled if the BOE is notified that I have filed bankruptcy. 3) The BOE may periodically require me to provide updated financial information to re-evaluate this agreement. 4) A state tax lien will be recorded if this agreement is terminated, if any portion of the liability remains unpaid for more than 30 months from the original bill date, or if the BOE determines that collection of the liability is in jeopardy. 5) Interest will continue to accrue on the unpaid tax or fee balance until paid in full. 6) The BOE has the authority to offset any California state agency refund. Unless the liability is paid in full from these sources, payments must continue as noted in this agreement.

NAME (please print)
Marcelino Chang

TITLE
Officer

SIGNATURE

DATE
4-15-13

TELEPHONE NUMBER
(310) 381818

CURRENT MAILING ADDRESS (street, city, state, zip code)
P.O. Box 2178 Redondo Beach CA 90278

DRIVER LICENSE NUMBER
N7300526

CURRENT RESIDENTIAL ADDRESS (street, city, state, zip code)
308 Avenue D. Redondo Beach CA 90277

SOCIAL SECURITY NO.* (except corp. officers)
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

**SECTION II: AUTO PAY AUTHORIZATION**
You must authorize the BOE to electronically debit your bank account for the payments required by this agreement. Complete all fields below and return this form with a voided check (checking account) or bank specification sheet (savings account) to the address below.

ACCOUNT TYPE
☒ Checking  ☐ Savings

BANK NAME AND ADDRESS
Union Bank — Hermosa Beach.

BANK ROUTING NUMBER (nine digit number)
122001496

BANK ACCOUNT NUMBER
0010670276

I certify that I have the authority to request an electronic debit from the account identified above and I authorize the BOE to initiate and process debit entries to the above bank account. This authorization will remain in effect until the liability periods included in my installment payment agreement have been paid, the BOE terminates this installment payment agreement, or I request the BOE to cancel my participation in Auto Pay. (Such request must be made in writing and be received by the BOE at least five business days prior to the scheduled payment date.)

I request that the payments required by this installment payment agreement, as detailed in Section I, "Schedule of Installment Payments," be debited from the above bank account. I understand that if a payment date is scheduled for a Saturday, Sunday, or bank holiday, my bank account will be debited on the next banking day following the payment due date.

I understand that if this authorization form is processed after the due date for the first payment has passed, the BOE will begin debiting my bank account on the due date of the next payment.

I understand the BOE will not charge me a fee for using Auto Pay, but I understand my financial institution may charge me a fee for accepting and processing electronic debit transactions.

I understand the BOE may terminate my installment payment agreement if a payment cannot be deducted from my bank account due to insufficient funds or if the above bank account is closed. I also understand I will be responsible for any overdraft fees charged by my bank.

AUTHORIZED NAME (please print)
Marcelino Chang

TITLE
Officer

AUTHORIZED SIGNATURE

DATE
4-15-13

| BOE USE ONLY | | |
|---|---|---|
| BOE REPRESENTATIVE'S SIGNATURE | DATE APPROVED | OFFICE<br>Culver City District Office |
| ADMINISTRATOR'S SIGNATURE (or Authorized Representative) | DATE APPROVED | ☐ RELIEF OF FINALITY PENALTY APPROVAL<br>☐ LIEN WITHHOLD APPROVAL<br>☐ SECURITY |

APR 05 2013



STATE OF CALIFORNIA

## STATE BOARD OF EQUALIZATION
5901 Green Valley Circle, Suite 200, Culver City, CA
PO Box 3652, Culver City, CA 90231-3652
1-310-342-1032 • FAX 1-310-342-1179
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

SEN. GEORGE RUNNER (Ret.)
Second District, Lancaster

MICHELLE STEEL
Third District, Orange County

JEROME E. HORTON
Fourth District, Los Angeles

JOHN CHIANG
State Controller

CYNTHIA BRIDGES
Executive Director

April 4, 2013

W'S CHINA BISTRO
REDONDO BROTHERS, INC
PO BOX 2178
REDONDO BEACH CA 90278-7678

Re: SR AS 100150621

Dear Taxpayer:

Thank you for submitting your current financial statement and documentation. This information was used to support your request for an installment payment agreement (agreement) to clear your liability of $91,131.32.

Your request has been approved. Based on our review of your account and financial condition, you are required to make $2,500.00 per month to be paid in biweekly payments of $1,250.00 each effective 04/10/2013 until 04/30/2014. Please note that interest will continue to accrue on the unpaid tax or fee amount until paid in full.

Please sign the enclosed BOE-407, *Installment Payment Agreement*, and return it to the office listed above by April 10, 2013. If we do not receive the signed agreement by that date, we will assume you have withdrawn your request for an agreement and will proceed with other collection actions.

You are required to make your installment payments using automatic payments. With automatic payments, we will automatically debit your checking or savings account for payments required by your agreement. To use automatic payments, you must authorize us to debit your bank account by completing and signing Section II of the agreement. Return the completed agreement to us with either a voided check (checking account) or bank specification sheet (savings account). Answers to frequently asked questions regarding automatic payments are enclosed with this letter.

It is important that you follow through with the terms of the agreement. If you do not, or we determine you omitted assets from your financial statement, we may terminate your agreement and proceed with other collection actions. If not previously assessed, a collection fee may be assessed on each liability included in the agreement that is more than 90 days past due.

A certificate of lien will be recorded if the agreement is terminated, if any portion of the liability remains unpaid more than 30 months after the original bill date even if the agreement is still in place, or if we determine payment of the liability is in jeopardy.

In addition, we have the authority to take any California state agency refund. Unless your liability is paid in full from these sources, payments must continue as noted in this agreement.

We may periodically reevaluate your financial condition and adjust the terms of your agreement if necessary. Any changes in your employment or income must be reported promptly.

For more information about our collection procedures and your payment options please read publication 54, *Tax Collection Procedures* located on our website at http://www.boe.ca.gov/pdf/pub54.pdf.

Please contact me at the telephone number or address listed above if your financial condition changes or if you have any questions regarding your agreement.

Sincerely,

Desta Gurfu
Tax Compliance Specialist
Culver City District Office

Enclosures

e•services
BOARD OF EQUALIZATION
Fast, Easy, and Accurate...www.boe.ca.gov

BOE-407-A REV. 6 (3-13)

# EXHIBIT 3

STATE OF CALIFORNIA

**STATE BOARD OF EQUALIZATION**
5901 Green Valley Circle, Suite 200, Culver City, CA
PO Box 3652, Culver City, CA 90231-3652
1-310-342-1048 • FAX 1-310-342-1179
www.boe.ca.gov

BETTY T. YEE
First District, San Francisco

SEN. GEORGE RUNNER (Ret.)
Second District, Lancaster

MICHELLE STEEL
Third District, Orange County

April 4, 2013

JEROME E. HORTON
Fourth District, Los Angeles

JOHN CHIANG
State Controller

CHONG'S
HERMOSA BROTHERS INC
PO BOX 2178
REDONDO BEACH CA 90278-7678

CYNTHIA BRIDGES
Executive Director

Re: SR AS 100052741

Dear Taxpayer:

Thank you for submitting your current financial statement and documentation. This information was used to support your request for an installment payment agreement (agreement) to clear your liability of $134,319.76.

Your request has been approved. Based on our review of your account and financial condition, you are required to make a payment of $1,250.00 every 10th of the month and on 24th of the month starting on April 10, 2013. Please note that interest will continue to accrue on the unpaid tax or fee amount until paid in full.

Please sign the enclosed BOE-407, *Installment Payment Agreement*, and return it to the office listed above by April 10, 2013. If we do not receive the signed agreement by that date, we will assume you have withdrawn your request for an agreement and will proceed with other collection actions.

You are required to make your installment payments using automatic payments. With automatic payments, we will automatically debit your checking or savings account for payments required by your agreement. To use automatic payments, you must authorize us to debit your bank account by completing and signing Section II of the agreement. Return the completed agreement to us with either a voided check (checking account) or bank specification sheet (savings account). Answers to frequently asked questions regarding automatic payments are enclosed with this letter.

It is important that you follow through with the terms of the agreement. If you do not, or we determine you omitted assets from your financial statement, we may terminate your agreement and proceed with other collection actions. If not previously assessed, a collection fee may be assessed on each liability included in the agreement that is more than 90 days past due.

A certificate of lien will be recorded if the agreement is terminated, if any portion of the liability remains unpaid more than 30 months after the original bill date even if the agreement is still in place, or if we determine payment of the liability is in jeopardy.

In addition, we have the authority to take any California state agency refund. Unless your liability is paid in full from these sources, payments must continue as noted in this agreement.

We may periodically reevaluate your financial condition and adjust the terms of your agreement if necessary. Any changes in your employment or income must be reported promptly.

For more information about our collection procedures and your payment options please read publication 54, *Tax Collection Procedures* located on our website at http://www.boe.ca.gov/pdf/pub54.pdf.

Please contact me at the telephone number or address listed above if your financial condition changes or if you have any questions regarding your agreement.

Sincerely,

Elidia Galaviz
Tax Compliance Specialist
Culver City District Office

Enclosures

BOE-407-A REV. 6 (3-13)



# EXHIBIT 4

Anthony O. Egbase, Esq. (SBN 181721)
Victoria T. Kajo Esq. (SBN: 265037)
Kevin Tang Esq. (SBN: 291051)
Crystle Lindsey Esq. (SBN: 281944)
**A.O.E LAW & ASSOCIATES | A Professional Law Corporation**
350 South Figueroa Street, Suite 189 Los Angeles, California 90071
Tel. (213) 620-7070; Fax. (213)-620-1200
*info@aoelaw.com*

Proposed Attorneys for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>**REDONDO BROTHERS INC.**<br><br>**Debtor-In-Possession** | **CASE No.: 2:15-bk-17527-BB**<br>**Chapter 11**<br><br>**INTERIM ORDER AUTHORING DEBTOR'S USE OF CASH COLLATERAL ON INTERIM BASIS PENDING A FINAL HEARING**<br><br>**Hearing**<br>Date:  TBD<br>Time:  TBD<br>Place: TBD |

At the above-referenced date, time, and location, the Court held a hearing on the Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim Basis Pending a Final Hearing (the "Motion") filed by Redondo Brothers Inc. (the "Debtor"), the debtor and debtor-in-possession in the above-captioned chapter 11 bankruptcy case. Appearances were made as set forth on the record of the Court. Upon consideration of the Notice of the Motion, the Motion, the Memorandum of Points and Authorities in support of the Motion, any evidence in support of the forgoing duly admitted into evidence by the Court, the arguments of counsel made at the hearing on the Motion, the record in this case and for good cause shown,

**IT IS HEREBY ORDERED**, as follows:

1. Notice of the Motion was appropriate under the circumstances and complied with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, as may have been modified by the Court.

2. The Motion is granted on an interim basis pending a final hearing, which shall be held on _____, 2015 at _____, at the above-referenced location (the "Final Hearing").

3. The Debtor is hereby authorized to use cash collateral pursuant to the terms of the Motion and the Budget attached hereto as Exhibit "1" through and including the conclusion of the Final Hearing.

4. Alleged secured creditors of the Debtor with liens on the Debtor's cash collateral shall be entitled to replacement liens with the same extent, validity, scope and priority as the prepetition liens held by such creditor.

5. Any further oppositions to the Motion must be filed with the Court and served on the United States Trustee, parties requesting special notice, the 20 largest general unsecured creditors and counsel to the Debtor so that it is received by no later than _____ 2015, at _____.

**IT IS SO ORDERED**

Dated:                      _____

                            UNITED STATE BANKRUPTCY JUDGE

# **<u>EXHIBIT 5</u>**

Anthony O. Egbase, Esq. (SBN 181721)
Victoria T. Kajo Esq. (SBN: 265037)
Kevin Tang Esq. (SBN: 291051)
Crystle Lindsey Esq. (SBN: 281944)
**A.O.E LAW & ASSOCIATES | A Professional Law Corporation**
350 South Figueroa Street, Suite 189 Los Angeles, California 90071
Tel. (213) 620-7070; Fax. (213)-620-1200
*info@aoelaw.com*

Proposed Attorneys for Debtor and Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA-LOS ANGELES DIVISION

| | |
|---|---|
| In re: | **CASE No.: 2:15-bk-17527-BB** |
| | **Chapter 11** |
| **REDONDO BROTHERS INC.** | |
| **Debtor-In-Possession** | **ORDER GRANTING DEBTOR'S EMERGENCY FIRST  DAY MOTION  FOR AN ORDER AUTHORIZING DEBTOR TO PAY PRE-PETITION CLAIMS OF CERTAIN CRITICAL VENDORS NECESSARY FOR ITS CONTINUED OPERATIONS (DOCKET #...)** |
| | **Date: To be Determined** **Time: To be Determined** **Place:** |

THIS MATTER came before the Court on ……….. at…... upon *Debtor's Emergency Motion for Authority to Pay Pre-Petition Claims of Critical Vendors* [Docket #...], and upon review of same, the Court, having reviewed the instant request and case record and finding good cause shown, does hereby

**ORDER** as follows:

    1. The Motion is **GRANTED**.

    2. Debtor is authorized, but not directed, to make the proposed payments to critical vendors as set forth in Exhibit "A" to this Order.

3. Nothing contained in the Motion or this Order shall be deemed: (i) an assumption, adoption, authorization to assume, or rejection of any executory contract or agreement between the Debtor and any third party pursuant to section 365 of the Bankruptcy Code; (ii) a requirement that the Debtor make any of the payments authorized herein; or (iii) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

4. This Order shall not be subject to the twenty-one (21) day time prohibition proscribed by Fed. R. Bankr. P. 6003(b) because the relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor's estate.

5. The requirements of Bankruptcy Rule 6004(a) are satisfied.

6. Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

###

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| **Anthony O. Egbase**<br>**Law Office of Anthony O. Egbase & Associates**<br>**The World Trade Center**<br>**350 S. Figueroa Street, Suite 189**<br>**Los Angeles, CA 90071**<br>**213-620-7070 Fax: 213-620-1200**<br>**181721**<br>☒ *Attorney for:* Debtor and Debtors-In-Possession | |

| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
|---|---|
| In re:<br><br>    **Redondo Brothers, Inc.**<br><br>Debtor(s). | CASE NO.: *15/17527-BB*<br>CHAPTER: **11**<br>ADV. NO.: |

## ELECTRONIC FILING DECLARATION
## (CORPORATION/PARTNERSHIP)

| | | |
|---|---|---|
| ☐ | Petition, statement of affairs, schedules or lists | Date Filed: _____ |
| ☐ | Amendments to the petition, statement of affairs, schedules or lists | Date Filed: _____ |
| ☒ | Other: *Declaration of Roberto Chong in Support of First Day Motions* | Date Filed: *5/12/15* |

### PART I - DECLARATION OF AUTHORIZED SIGNATORY OF DEBTOR OR OTHER PARTY

I, the undersigned, hereby declare under penalty of perjury that: (1) I have been authorized by the Debtor or other party on whose behalf the above-referenced document is being filed (Filing Party) to sign and to file, on behalf of the Filing Party, the above-referenced document being filed electronically (Filed Document); (2) I have read and understand the Filed Document; (3) the information provided in the Filed Document is true, correct and complete; (4) the "/s/," followed by my name, on the signature lines for the Filing Party in the Filed Document serves as my signature on behalf of the Filing Party and denotes the making of such declarations, requests, statements, verifications and certifications by me and by the Filing Party to the same extent and effect as my actual signature on such signature lines; (5) I have actually signed a true and correct hard copy of the Filed Document in such places on behalf of the Filing Party and provided the executed hard copy of the Filed Document to the Filing Party's attorney; and (6) I, on behalf of the Filing Party, have authorized the Filing Party's attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California.

X _Roberto M. Chong_             *5/12/15*
Signature of Authorized Signatory of Filing Party       Date

**Roberto Chong**
*Printed Name of Authorized Signatory of Filing Party*

**President**
*Title of Authorized Signatory of Filing Party*

### PART II - DECLARATION OF ATTORNEY FOR FILING PARTY

I, the undersigned Attorney for the Filing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Filing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) an authorized signatory of the Filing Party signed the *Declaration of Authorized Signatory of Debtor or Other Party* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature of the authorized signatory of the Filing Party in the locations that are indicated by "/s/," followed by the name of the Filing Party's authorized signatory, on the true and correct hard copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration, the Declaration of Authorized Signatory of Debtor or Other Party*, and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration, the Declaration of Authorized Signatory of Debtor or Other Party*, and the Filed Document available for review upon request of the Court or other parties.

_Kevin Tang_ on behalf of Anthony Egbase       *5/12/15*
Signature of Attorney for Filing Party       Date

**Anthony O. Egbase** _Kevin Tang_
*Printed Name of Attorney for Filing Party*

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.